UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

JAMES EARL WARREN,

        Defendant.

Case No. 24-cr-0094-bhl

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION AND ORDER

      On May 7, 2024, a grand jury returned a five-count indictment charging Defendant James Earl Warren with (1) unlawful possession of a machine gun, in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2); (2) unlawful possession of ammunition by a felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8); (3) possession with intent to deliver controlled substances, in violation of Title 21 United States Code, Sections 841(a)(1), (b)(1)(B)–(D), and (b)(2); (4) maintaining a drug involved premises, in violation of Title 21, United States Code, Section 856(a)(1); and (5) possession of a firearm in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). (ECF No. 1.) On July 3, 2024, the defendant was arraigned, and the magistrate judge set a schedule for filing pretrial motions. (ECF No. 6.)

      On October 1, 2024, Warren filed a motion to suppress evidence obtained during the search of his residence and subsequent searches of cellular phones recovered from that residence. (ECF No. 20.) He also requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.* at 10–14.) On January 30, 2025, after briefing on the motion was completed, Magistrate Judge Nancy Joseph issued a report denying Warren's request for a *Franks* hearing and recommending that the motion to suppress be denied. (ECF No. 33.) Warren then filed objections to the report and the parties have since completed briefing on those objections. (ECF No. 36, 39 & 42.) (ECF

Nos. 39 & 42.) For the reasons stated below, the Court will adopt Judge Joseph's report and deny the defendant's request for a *Franks* hearing and his motion to suppress.

## FACTUAL BACKGROUND

On February 24, 2024, Milwaukee Police and Fire Departments officers were dispatched to a vehicle fire located on West Custer Avenue in Milwaukee, Wisconsin. (ECF No. 26 at 2.) Officers found a 1975 Chevrolet Monte Carlo that had sustained fire damage and observed that the vehicle's front passenger window had been shattered and both a large stone and a plastic water bottle with a wick were on the floorboard. (*Id.* at 2–3.) The Milwaukee Fire Department determined that the vehicle had been intentionally set on fire. (*Id.* at 3.) The Milwaukee Police Department recovered three spent shell casings immediately outside the apartment building where the vehicle had been set on fire. (*Id.*) Police officers interviewed Marica Hampton, the owner of the vehicle, who told law enforcement that she heard the sound of breaking glass, looked out her window, saw her car on fire, and then went out to extinguish the fire. (*Id.*) Hampton further confirmed that she had heard gunshots but had not seen anyone firing them. (ECF No. 20 at 3.)

Police then reviewed surveillance footage from a business directly across the street from Hampton's residence, showing an unknown individual setting the vehicle on fire. (ECF No. 26 at 3.) The video then revealed a Black male exiting the apartment building with a firearm, pointing the firearm in the air, and discharging it in the area where the three casings had been recovered. (*Id.*) The same male then walked up to the vehicle, extinguished the fire with a bucket of water, and re-entered the apartment building. (*Id.*) Based on the surveillance footage, police officers determined that Hampton had not been truthful and further investigated the identity of the person in the video. (*Id.* at 4.)

Milwaukee Police Department Detective Nicholas Beckett checked the history of recent calls for service at Hampton's apartment on Custer Avenue and discovered a January 18, 2024 service call, about five weeks before the arson. (ECF No. 20 at 3.) The caller, identified as "Marissa," told officers that she was trying to "leave the house but her child[']s father [was] threatening to physically harm her." (*Id.* at 3–4.) The subject of the call was identified as "James Warren." (*Id.* at 4.) Beckett searched prior arrest records for James Warren and found he had a prior felony conviction and an open case in Milwaukee County with a bail/bond condition restricting his possession of a firearm. (ECF No. 21, Exhibit B ¶¶24–25.) Warren's address was listed as 2801 W. Custer Avenue, #202, the same apartment as Hampton's. (*Id.* ¶22.) After

reviewing arrest/booking photographs of Warren, Beckett "positively matched" Warren as the Black male carrying the firearm and firing shots before extinguishing the fire set to Hampton's vehicle. (*Id.* ¶23.)

On March 4, 2024, Beckett sought a state court warrant to search 2801 W. Custer Avenue, #202, in Milwaukee. (*Id.* at 1.) Based on the facts identified above, the residential search warrant identified three offenses for which evidence was sought: felon in possession of a firearm, endangering safety/dangerous use of a weapon, and felony bail jumping. (*Id.* at 2.) The warrant affidavit detailed the investigation determining Warren was the shooter, including the review of surveillance video and Warren's arrest records, arrest/booking photographs, and Department of Transportation records. (*Id.* ¶¶5–27.) The warrant affidavit further articulated that probable cause for the search was based on the "totality of the circumstances" and "supported by inferences as well as facts." (*Id.* at 10.) The warrant was executed on March 7, 2024, and the following items were recovered: a polymer Glock, 9mm pistol, bearing no serial number, with a machine gun conversion switch attached; a SCCY, .380 caliber pistol bearing serial number A027552; an assault-rifle style short-barreled shotgun, bearing no serial number; approximately 176 rounds of various ammunition; 59.41 grams methamphetamine/fentanyl pills; approximately 7.7 grams Xanax bars; approximately 329.2 grams marijuana; approximately 111.1 grams methamphetamine pills and powder; approximately 4 grams fentanyl powder; approximately 5.2 grams methamphetamine/fentanyl powder; and multiple cellular phones. (ECF No. 26 at 5–6.)

As a result of the search warrant, Warren was arrested and, after being read his Miranda Rights, agreed to be interviewed by law enforcement officers. (ECF No. 21, Exhibit C ¶¶24–25.) Warren admitted to being the individual that extinguished the fire but denied that he had a firearm. (*Id.* ¶25.) As noted in the affidavit, the male who used water to extinguish the fire was the same individual who carried and fired the pistol. (*Id.*) That individual also fit the image and description of Warren. (*Id.*)

ATF Special Agent Paul Kozelek applied for a federal search warrant to examine the cellular phones recovered during the residential search. (*Id.* ¶1.) Kozelek sought to obtain evidence relating to charges of maintaining a drug trafficking place, possession with intent to distribute a controlled substance, possession of a firearm in furtherance of drug trafficking, possession of a firearm and ammunition by a convicted felon, and possession of an unregulated firearm. (*Id.* ¶15.) Kozelek stated that Warren was identified as the individual in the surveillance

video by comparing the video footage of the arson to prior booking and driver's license photographs, and as the individual who fired "what appeared to be a fully automatic pistol in the direction of the suspected arsonist." (*Id.* ¶17.) Kozelek further stated that on March 7, 2024, Warren admitted to being the individual that extinguished the fire but denied that he had a firearm. (*Id.* ¶25.)

## STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 59, a "district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence . . . ." Fed. R. Crim. P. 59(b)(1); *see also* Gen. L.R. 72(b)(2)(N) (magistrate judges' duties include "[s]upervising and determining all pretrial proceedings and motions made in criminal cases including, without limitation, motions and orders made pursuant to Fed. R. Crim. P. 12 . . ."). After the magistrate judge enters a recommendation regarding a motion, the district judge reviews *de novo* any objections to the recommendation. Fed. R. Crim. P. 59(b)(3). The district court may "accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." *Id.*

## ANALYSIS

The Court has reviewed the motion and responses, Judge Joseph's thorough and well-reasoned report, the defendant's objections, the government's response to those objections, and the defendant's reply. Even applying *de novo* review to those portions objected to by the defendant, the record confirms, as described below, that Judge Joseph correctly concluded that the defendant was not entitled to a *Franks* hearing and his motion to suppress should be denied. Accordingly, the Court will overrule the defendant's objections and adopt the magistrate judge's report.

### A. The Defendant Is Not Entitled to a *Franks* Hearing Because He Has Not Shown a Material Misrepresentation or Factual Omission Warranting Such a Hearing.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court recognized a criminal defendant's right, in limited circumstances, to challenge the veracity of statements made in an affidavit supporting a search warrant. A defendant may dispute the accuracy of an allegedly faulty affidavit at a so-called *Franks* hearing if he first makes a "'substantial preliminary showing' that: (1) the affidavit contained a materially false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001)

(quoting *Franks*, 438 U.S. at 155–56). "What is needed is 'direct evidence of the affiant's state of mind' or else 'circumstantial evidence' of 'a subjective intent to deceive.'" *United States v. Daniels*, 906 F.3d 673, 677 (7th Cir. 2018) (per curiam) (quoting *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014). To make the necessary preliminary showing, "the evidence must show that the officer submitting the [affidavit] perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the allegations." *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (citing *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000)).

In denying Warren's request for a *Franks* hearing, Judge Joseph found that Warren did not make a preliminary showing that Detective Beckett's statement that Warren "positively matched" the Black male observed in surveillance footage with a firearm was a misrepresentation or made with reckless disregard for the truth. (ECF No. 33 at 8.) Warren objects to that finding and argues that the surveillance video "did not provide a clear enough image" to determine Warren "positively matched" the Black male depicted. (ECF No. 36 at 2–3.) Warren argues that Beckett misrepresented his level of certainty because the video was not clear enough to make an unequivocal identification. (*Id.* at 3.)

Judge Joseph found, however, that the surveillance video was clear enough for Beckett to swear that the person viewed in the video positively matched Warren's booking photos because "[t]he video captures various angles of the subject's face, body, and . . . distinctive hairline and medium length dreadlocks which matches that of Warren's booking photos." (ECF No. 33 at 8.) The booking photos also provide Warren's height and weight, which Beckett could reasonably compare to the video. (*Id.*) The Court agrees with Judge Joseph that the video was clear enough for Beckett to compare the individual captured on the surveillance video to Warren's booking photos and description and supports the reasonableness of Beckett's identification of Warren. Warren has not demonstrated that Beckett made any material misrepresentation or that he recklessly disregarded the truth.

Warren also requested a *Franks* hearing regarding the federal search warrant, arguing the warrant contained the same misrepresentations as Beckett's, namely that Warren "positively matched" the individual depicted with the firearm and extinguishing the fire. As previously noted, the Court has determined that this was not a misrepresentation warranting a *Franks* hearing. In addition, Warren argues that the warrant affidavit omitted information that undermined Warren's connection to the drugs and firearms found in the apartment, including that Hampton told officers

she believed the backpack where the bulk of the controlled substances were found belonged to her teenaged son and that she had seen her son in possession of the recovered Glock in videos but denied ever seeing Warren with a gun. (ECF No. 36 at 11–12.) Warren also notes that Kozelek stated in the affidavit that surveillance footage captured Warren "as he exited the residence and fired what appeared to by a fully automatic pistol in the direction of the suspected arsonist." (*Id.* at 12 (citing ECF No. 20, Exhibit C ¶17).) Warren argues that the video neither showed any shots fired in the direction of the arsonist nor supports the conclusion that the firearm appears to be a fully automatic pistol. (*Id.*) Warren also argues that Kozelek's statement that the Glock that was recovered from the apartment was "later test fired by MPD and it ballistically matched the fired casing recovered by MPD on 2/24/24 during the arson investigation," (ECF No. 20, Exhibit C ¶20), is scientifically unsupportable. (ECF No. 36 at 12–13.)

Judge Joseph determined the inclusion of these statements in the affidavit did not warrant a *Franks* hearing. (ECF No. 33 at 9–10.) Judge Joseph noted that while the video does not show Warren firing at the arsonist, this statement does not warrant a *Franks* hearing. She explained that Warren admitted to extinguishing the fire and is therefore, as shown in the video, the same individual firing and possessing a firearm. (*Id.*) Judge Joseph also noted that "whether the [National Integrated Ballistic Information Network] results can be confirmed by an expert at trial does not negate probable cause." (*Id.* at 10.) The Court agrees. And as to the alleged omissions, Warren fails to show that if they were included, the affidavit would not support a finding of probable cause. When Kozelek applied for the federal search warrant, Warren had admitted to being the individual who extinguished the fire the night of the arson and the surveillance video showed that the person who extinguished the fire fired a shot prior to approaching the car. Consequently, Warren does not establish that he is entitled to a *Franks* hearing.

## B. The Search Warrant Affidavit Established Probable Cause to Search Warren's Residence.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" *United States v. Mykytiuk*, 402 F.3d 773, 775–76 (7th Cir. 2005) (quoting *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003)). "A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it 'sets forth sufficient

evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.* at 776 (quoting *Peck*, 317 F.3d at 756). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

"The task of the issuing [judge] is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (cleaned up) (quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). That decision is afforded great deference. *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Thus, a reviewing court should "uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). Reversal is appropriate "only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the [judge] could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984)). "[D]oubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Beckett's affidavit supporting the state search warrant supports a finding of probable cause. As discussed by Judge Joseph, the affidavit explained that Warren, a convicted felon, "probably fired the shots, possessed a firearm while extinguishing the fire, and retreated back into the [Custer Avenue complex on the night of the arson]"; "Warren had an open Milwaukee County case with a bail restriction on his possession of firearms;" "Warren's prior arrest records listed the Custer Avenue apartment as his residence;" and that Warren was considered a threat to the Custer Avenue complex based on the complex's service call history. (ECF No. 33 at 12 citing Exhibit B ¶¶ 19, 22, 23, 24.)

Warren objects to Judge Joseph's finding that the warrant, on its face, established probable cause to search his residence because the affidavit contained no allegations or evidence of any ongoing or continuing criminal activity. (ECF No. 36 at 8.) Warren further notes that the only criminal activity alleged is a "single incident of possessing a firearm on the day of the arson" that

he argues is not enough to justify the search of his home ten days later. (*Id.* at 8–9.) The Court disagrees. Detective Beckett's observations and statements were more than enough to establish probable cause justifying the search. An affidavit for a search warrant establishes probable cause when it alleges facts sufficient to induce a reasonably prudent person to believe that a search of a particular place will uncover evidence of a crime. *Peck*, 317 F.3d at 756. The affidavit provided a reasonable inference that Warren illegally possessed firearms at his residence after an individual who positively matched his booking photos was observed with a firearm, fired shots, and then retreated back into the Custer Avenue apartment building with the firearm. According to the affidavit, Warren's prior arrest records listed the Custer Avenue apartment as his residence and that he had an open Milwaukee County case with a bail restriction prohibiting his possession of a firearm. (ECF No. 21, Exhibit B ¶¶22, 24.) Consequently, there was a direct connection between the alleged offenses of possession of a firearm by a felon, endangering safety by use of a dangerous weapon, and felony bail jumping at the Custer Avenue apartment. And it was reasonable for the issuing judge to conclude that the evidence sought, namely firearms, would be found at the residence, even ten days after the arson and shots fired incident, when the individual who fired the gun was observed returning to his residence with the firearm in his possession. The Court also agrees with Judge Joseph that the fact that ten days had passed between the arson incident and the date the officers searched the defendant's residence does not undermine probable cause. (*See* ECF No. 33 at 13.)

The defendant also takes issue with the breadth of the search, which included the seizure of all cellphones from the apartment. Warren argues that the affidavit "lacked any particularized facts linking any cellphones to alleged criminal activity." (ECF No. 36 at 10.) Judge Joseph noted that Beckett sought not only firearms, but also documentary and electronic evidence related to the alleged crimes and who controlled the premises and found it was not unreasonable for the issuing judge to credit Beckett's statements that those who possess firearms frequently have photographs of themselves with firearms. (ECF No. 33 at 13.) This Court agrees that it was not unreasonable to concluded that there was probable cause that such evidence could be found on the cellphones within the Custer Avenue apartment. The seizure and subsequent search of Warren's cellphones was supported by probable cause and was therefore valid.

Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Defendant's objections to Judge Joseph's Recommendation and Order, ECF No. 36, and **ADOPTS** the Recommendation and Order of Judge Joseph, ECF No. 33.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress, ECF No. 20, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's request for a *Franks* hearing is **DENIED**.

Dated at Milwaukee, Wisconsin on April 14, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge